STATE

v.

Samuel **ADEWUMI.**

No. 2007–334–C.A.

Supreme Court of Rhode Island.

March 17, 2009.

Jane M. McSoley, Department of Attorney General, for Plaintiff.

Paula Rosin, Office of the Public Defender, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Justice FLAHERTY, for the Court.

The defendant, Samuel Adewumi, appeals to this Court from a judgment of conviction after a trial justice, sitting without a jury, found him guilty of a single count of patient abuse in violation of G.L. 1956 § 23–17.8–1(a)(1)(i). The defendant was sentenced to three years probation, was ordered to have no contact with the victim, Joseph DaRocha, and was required to attend counseling.

This case came before the Supreme Court for oral argument on January 27, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the parties' arguments and considering the memoranda submitted by counsel, we are satisfied that cause has not been shown. Accordingly, we will decide the appeal at this time. For the reasons set forth in this opinion, we affirm the judgment of conviction of the Superior Court.

### Facts and Procedural History

The trial record reveals the following facts. In July 2005, Joseph DaRocha was a patient at the South Kingstown Nursing and Rehabilitation Center in West Kingston. DaRocha suffered from Alzheimer's disease and dementia. Adewumi was a certified nursing assistant who began working at the facility in June 2005. On July 3, 2005, Adewumi was on duty in the Alzheimer's unit, conducting patient checks and ensuring that the patients were in their rooms.

Shanon Ahearn, a licensed practical nurse who testified for the state, also was on duty that evening. She said that at around 12:30 a.m. on July 3, 2005, she heard DaRocha yelling, "please don't hurt me. Stop that." She testified that she hurried to DaRocha's room to investigate, and when she arrived at his door, she heard what sounded like a slap emanating from his room. She said she proceeded into the room and, within about two seconds, she looked into the bathroom and saw Adewumi raise his hand and strike DaRocha on the patient's right upper thigh. She testified that she was about two feet away from Adewumi when she saw him slap DaRocha, who had his arms up in a defensive position. She said that she then immediately yelled, "you hit him!" to Adewumi and she instructed him to leave the room and the facility. She also related that Dale Richmond, another certi-

fied nursing assistant, was with her when she first heard the noises arising from DaRocha's room. Ahearn acknowledged that Richmond followed behind her as she traveled the hallway to DaRocha's room, but maintained that Richmond was not in the room with her when she arrived. Ahearn recalled that after Adewumi left the room, she finished washing DaRocha and she checked him for any red marks or abrasions; she conceded that she found none. Ahearn said that she had worked at the facility for a year and a half but had worked with Adewumi only two or three times before the incident in the patient's room.

On cross-examination, Ahearn acknowledged that Adewumi was compliant with her request that he leave and that he appeared to be calm and composed. She also conceded that DaRocha was known to be a patient who would become agitated and combative with employees, that he would strike employees, that he would wander out of his room, and that he was at risk of falling if he was not assisted. She also said that there was an alarm in the bathroom that could be used to call for assistance if a nurse was confronted with an emergency.

The state also offered the testimony of Susan Hawley, the director of nurses at the facility. Hawley testified that she investigated the incident and reported it to the Department of Health within twenty-four hours. She said that she had been a registered nurse at the facility since 1994 and that she was promoted to director of nursing in March 2005. Hawley testified that she was at home when she received a telephone call about the incident. She said she immediately went to the facility to begin an internal investigation and prepare a report. She recalled that she interviewed Ahearn, but she did not recall whether she had spoken to Richmond about the incident at that time. Hawley testified that she determined that DaRocha had no physical sign of an injury, that he did not display any behavior that would indicate he had suffered an injury, and that he was unable to relate anything that had happened. Hawley explained that according to facility policy, when a patient is agitated the nurse must ask for assistance or leave the patient, and then reapproach later.

The state rested after presenting Ahearn and Hawley as witnesses. Defense counsel then moved to dismiss the state's charge against defendant pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure. After hearing argument from counsel, the trial justice denied the motion. He concluded that, if believed, the evidence was sufficient to find defendant guilty beyond a reasonable doubt. The trial justice recited that the standard for his consideration required him to refrain from passing on the witnesses' credibility and to view the evidence and make inferences in favor of the state as the nonmoving party. Defense counsel objected to the standard employed by the trial justice in considering the motion to dismiss. He argued that according to *State v. McKone*, 673 A.2d 1068 (R.I.1996), a trial justice conducting a nonjury trial must act as the fact-finder and evaluate the evidence, make inferences, and assess the credibility of witnesses. The trial justice expressed his hesitation to make a determination that the state's witnesses were credible without having heard defendant's witnesses. He said that his unease was founded on the fact that this was an "eyewitness case" that would rise and fall on his determinations of credibility, and he expressed concern about any indications of prejudice or prejudgment that he might make. Nevertheless, the trial justice denied the motion. After further noting his exception, defen-

dant proceeded to introduce his own evidence.

The defendant's first witness was Dale Richmond. Richmond, a nursing assistant in the Alzheimer's unit of the facility, also was on duty on July 3, 2005. She had been employed by the nursing home for about sixteen years. She testified that during that evening, she and Adewumi were doing rounds when Adewumi went to take care of DaRocha. She said that she was with Ahearn in the dayroom when they heard a commotion. Ahearn left to investigate the situation, and Richmond followed behind her. Richmond testified that she was about five feet behind Ahearn as they traveled down the corridor and about four feet behind when Ahearn reached DaRocha's room. When she entered the room, Ahearn was in front of her, standing in the doorway to the bathroom, and she saw Adewumi and DaRocha in separate corners of the bathroom. Richmond described that she observed DaRocha standing and swaying back and forth with his arms above his waist. She said that she believed that Adewumi was trying to wash the patient, but that DaRocha was not cooperating. Richmond testified that she did not hear any slap nor did she see Adewumi strike DaRocha. Richmond recalled that after she entered the room, Ahearn said, "I thought I heard a slap," and she replied that she had not heard nor did she see Adewumi hit DaRocha. Richmond remembered that she and Ahearn checked DaRocha for marks or redness, but they did not find any sign of injury. Richmond testified that she had never before worked with Adewumi, but that she had cared for DaRocha and knew that he had mood swings and that he would be uncooperative with the nurses on occasion. She testified that neither Hawley nor the state ever contacted her to make a statement. She also explained that if a patient who was deemed at risk of falling becomes agitated, the nurse should not leave the patient, but should instead call for help. Richmond explained that the sink in DaRocha's room was outside the bathroom, and the dimensions of the bathroom itself were only about four feet by four feet.

On cross-examination, the prosecutor noted Richmond's use of a cane to ambulate and asked her why she used it. Richmond explained that she walked with a cane because she had had surgery on her ankle. However, she testified that she did not walk with a cane in July 2005, and that her ankle problem did not develop until June 2006.

The defendant took the stand on his own behalf and he denied that he struck DaRocha. He testified that on July 2, 2005, he began work at 3 p.m. and that he was scheduled to work a double shift. He recalled checking in on DaRocha around 12:30 a.m. on July 3, 2005, and discovering that DaRocha had wet his bed and soiled himself. Adewumi recounted that in response, he went into the hallway to get a washcloth and towel, he reentered the room to obtain an adult diaper from the closet, and he then assisted DaRocha in walking to the bathroom. He testified that he started to clean DaRocha but that DaRocha became aggressive and combative as he was removing the soiled diaper. Adewumi testified further that DaRocha pushed his hands away and hit him in the face with his left hand. Adewumi said that he responded to DaRocha by saying, "Joe, you know I can't leave you dirty. You need to be changed." Adewumi said he tried again to change him. But this time DaRocha became unsteady as he tried to swing his arms, so Adewumi placed his hands on the patient to steady him, and in response, DaRocha hit him on his exposed left arm, below his sleeve. Adewumi remembered that Ahearn called to him and

said, "you hit him," and that he had denied her accusation and told her, "Joe was the one hitting me." He said that Ahearn then scolded him for not informing her that DaRocha was acting up. Adewumi estimated that at this time, Richmond was standing five to six feet behind Ahearn.

On cross-examination, Adewumi conceded that he was trained to either call for help when dealing with a difficult patient or to leave the room and reapproach the patient later. He explained, however, that he was unable to reach the alarm button from where he was standing because he had to hold up DaRocha, who, according to the patient chart he had reviewed that day, was at risk of falling.

At the close of all the evidence, the trial justice weighed and evaluated the evidence presented by the parties, passed on the credibility of the witnesses, and drew inferences from the testimony. Specifically, the trial justice found Ahearn to be credible because she was forthright and unwavering in her testimony and she portrayed no indication of bias. The trial justice further explained that he found the nurse to be credible both after the state rested and after the close of the evidence. He noted that the language of the statute did not require the state to prove an injury as an element of the offense; therefore, Ahearn's testimony alone, if believed, proved the state's charge beyond a reasonable doubt.[1] The trial justice did not give weight to Richmond's testimony because he questioned whether she could keep up with Ahearn because she was heavily built and had difficulty walking. The trial justice noted that according to the testimony, Richmond arrived at the room after Ahearn, and Ahearn would have been partial-

ly blocking her view. He inferred that Richmond arrived after the slap, which would explain why she did not hear or see Adewumi slap DaRocha. The trial justice concluded that the case, therefore, turned on credibility, and it was Ahearn's word against Adewumi's. The trial justice deduced that Adewumi's testimony contained factual gaps. Specifically, the court did not believe that he was unable to reach the emergency call button in such a small bathroom, he did not testify how he could have washed DaRocha without wetting the washcloth, he was evasive in some of his responses, and he had an interest in the outcome of the case. The trial justice, therefore, in a bench decision, found defendant guilty beyond a reasonable doubt of patient abuse. Thereafter, Adewumi filed a motion for a new trial pursuant to Rule 33 of Superior Court Rules of Criminal Procedure, which the trial justice heard and denied on May 8, 2007.

Adewumi has timely appealed to this Court. He asserts three errors below: he argues that (1) the trial justice applied an improper standard for evaluating a motion to dismiss in a jury-waived trial; (2) the trial justice misconceived relevant, material evidence when he found Richmond's testimony less credible because of her difficulty in walking with a cane; and (3) the trial justice impermissibly shifted the burden of proof by (a) requiring defendant to explain the lack of an observable injury to DaRocha, and (b) faulting defendant for his failure to testify that he wet the washcloth.

## Standard of Review

■ "In a jury-waived criminal proceeding, this Court gives deference to a

1. General Laws 1956 § 23–17.8–1(a)(1)(i) provides "Abuse" means:

"Any assault as defined in chapter 5 of title 11, including, but not limited to, hitting, kicking, pinching, slapping, or the

pulling of hair; provided, however, unless it is required as an element of the offense charged, it shall not be necessary to prove that the patient or resident was injured by the assault* * *."

trial justice's finding of facts." *State v. Forand,* 958 A.2d 134, 138 (R.I.2008). "When reviewing determinations of credibility and findings of fact by a trial justice sitting without a jury, this Court will not disturb the trial justice's findings unless they are clearly wrong or the trial justice misconceived or overlooked material evidence on a controlling issue." *State v. LaCroix,* 911 A.2d 674, 679 (R.I.2006).

■ Furthermore, a trial justice sitting without a jury may not, pursuant to Rule 33, order a new trial, but instead "may vacate the judgment * * * take additional testimony and direct the entry of a new judgment." *State v. DiPetrillo,* 922 A.2d 124, 131 (R.I.2007) (quoting *State v. Dunn,* 726 A.2d 1142, 1146 (R.I.1999)). Therefore, the trial justice's ability to grant relief is of "limited effectiveness." *Id.* at 130–31 (quoting *State v. Champagne,* 668 A.2d 311, 313 (R.I.1995)). "When this Court reviews the denial of a Rule 33 motion in the context of a jury-waived trial, we apply the same deferential standard of review as would be applied to the Superior Court justice's factual findings on the merits." *Id.* at 131 (citing *Champagne,* 668 A.2d at 313). "Such determinations are entitled to great weight and will not be disturbed unless the trial justice has overlooked or misconceived relevant and material evidence or was otherwise clearly wrong." *Id.* (quoting *Champagne,* 668 A.2d at 313).

## Analysis

### I

### Standards Applicable to Motion to Dismiss in a Nonjury Trial

The first issue on appeal is whether the trial justice applied the correct standard when he denied defendant's motion to dismiss. To support the motion to dismiss, defense counsel questioned the credibility of Ahearn's testimony that she heard and saw Adewumi slap DaRocha on the thigh. He argued that the witness had been impeached because there was no evidence of redness, swelling, bruising, or any other indication of injury to DaRocha's thigh; therefore, the evidence did not rise to the level of proof beyond a reasonable doubt. When considering the motion, the trial justice recited that his decision was guided by the standard set forth in Rule 29. Specifically, he said that the proper application of that standard required that he "view the evidence in the light most favorable to the nonmoving party, that is the State, and give the State's witnesses full credibility and draw all of the inferences, basically, that can be drawn from that evidence in favor of the nonmoving party." Defense counsel objected to the standard that the trial justice employed. He argued that according to *McKone,* the correct standard on a motion to dismiss in a nonjury case requires the trial justice to assess the credibility of the witnesses, weigh and evaluate the evidence, and engage in the inferential process in an impartial manner. Nevertheless, the trial justice declined to weigh the credibility of the state's witnesses and ruled that there was sufficient proof which, if believed, would satisfy all the elements of the charge and would be sufficient to find defendant guilty beyond a reasonable doubt.

■ We agree with defendant that the trial justice applied the wrong standard. In a jury-waived trial, when evaluating a motion to dismiss, the trial justice, acting as fact-finder; must:

> "weigh and evaluate the trial evidence, pass upon the credibility of the trial witnesses, and engage in the inferential process, impartially, not being required to view the inferences in favor of the nonmoving party, and against the moving party. After so doing, if the trial

justice * * * concludes that the trial evidence is sufficient to establish guilt beyond a reasonable doubt, he or she denies the defendant's motion to dismiss * * *. If the evidence is not so sufficient, he or she grants the motion and dismisses the case." *Forand,* 958 A.2d at 141 (citing *McKone,* 673 A.2d at 1072–73).

Instead of remaining impartial and considering the credibility of the state's only percipient witness, Ahearn, the trial justice applied the standard for a motion for judgment of acquittal in a jury trial, in which the trial justice must "view and evaluate the nonmoving party's evidence in a light most favorable to the nonmoving party and against the moving party[,]" must not "weigh the trial evidence or * * * pass upon the credibility of witnesses[,]" and must draw "all inferences favoring the nonmoving party and against the moving party." *Id.* at 140 (quoting *McKone,* 673 A.2d at 1072–73).

■ We note that at oral argument, in light of *Forand,* 958 A.2d at 138, it was undisputed that this error was not a viable ground for an appeal. We regard this error as harmless, because at the close of all the evidence, the trial justice acted as the fact-finder and employed the correct standard by weighing the evidence adduced at trial, evaluating the credibility of the witnesses, and drawing inferences without favoring the state. After he reviewed the evidence, the trial justice concluded that the case, distilled to its essence, amounted to a credibility contest between Ahearn and Adewumi, and he concluded that Adewumi's testimony had undermined his credibility. The trial justice explained that, "the [c]ourt both at the end of the State's case when the State rested and now after both sides have rested, finds Ms. Ahearn to be a credible witness and finds that all of the other

elements of the offense are met." Therefore, even if Adewumi had not testified, the outcome would not have changed because the state presented evidence that Adewumi slapped DaRocha, which the trial justice found credible and sufficient for a finding of guilty beyond a reasonable doubt, and we afford deference to such determinations of credibility. *See LaCroix,* 911 A.2d at 679.

## II

### Testimony of Dale Richmond

■ The defendant also argues that the trial justice gave insufficient weight to the testimony of Richmond, who testified that she did not hear a slap or see Adewumi strike DaRocha. Specifically, defendant maintains that the trial justice drew an improper inference that Richmond could not have walked fast enough, in light of her use of a cane, to have perceived Adewumi slap DaRocha. The evidence at trial, he asserts, was insufficient for the trial justice to have concluded that Richmond had difficulty ambulating in July 2005 because she testified that she did not use a cane at the time of the incident and that the problems with her ankle did not arise until June 2006.

In our opinion, defendant mischaracterizes the trial justice's considerations. The trial transcript reflects that he said:

"even if you believe [Richmond]—and frankly I don't think that based upon my observation of her, she's a heavy-set woman who had a great deal of difficulty walking not just with the use of the cane—whether she would be able to keep up with Ms. Ahearn is questionable. But in any event, she arrived there some time after Ms. Ahearn and wasn't there when Ms. Ahearn said that the slap occurred."

The trial justice considered it unlikely that Richmond had the opportunity to see or hear defendant strike the patient, notwithstanding the fact that she may have had difficulty walking because of her physical condition. His evaluation of the evidence was justified and was not erroneous, based on any misconception, or otherwise clearly wrong. *See LaCroix,* 911 A.2d at 679. Richmond testified that she was four to five feet behind Ahearn as they walked down the corridor, Ahearn testified that Richmond was not with her when she entered the patient's room, and Adewumi testified that Richmond arrived in the room after Ahearn and was five to six feet behind her. Therefore, the evidence was sufficient to conclude that Richmond did not arrive in the room until after Ahearn and that she was not present at the time Ahearn heard and saw the slaps. We therefore find no error in the weight the trial justice afforded to Richmond's testimony.

## III

### Whether the Trial Justice Impermissibly Shifted the Burden of Proof

In the last issue he raises on appeal, defendant argues that the trial justice erred when he denied defendant's motion for a new trial because the trial justice "impermissibly shifted the burden of proof to the defense" on two issues: (1) when he commented that defendant had not offered evidence to explain why DaRocha did not have a mark on his thigh, and (2) when he commented that defendant did not offer evidence of how he wet the washcloth to clean DaRocha. We review the trial justice's denial of a Rule 33 motion after a jury-waived trial according to the same deferential standard of review that we apply to the trial justice's factual findings on

the merits. *DiPetrillo,* 922 A.2d at 131 (citing *Champagne,* 668 A.2d at 313).

We do not agree with defendant's analysis of the trial justice's reasoning. The trial justice considered the lack of evidence of an injury in his findings when he evaluated the credibility of Ahearn's testimony, and he concluded that the lack of a red mark or other sign of trauma did not discredit her. The trial justice explained as follows:

"[Ahearn] admitted quite clearly there was no evidence of it. There was no expert testimony offered to explain that to say well, there couldn't have been a slap, not that there was any required. But, this Court, as I say, does not discredit her testimony simply because of the fact that there was no evidence of a slap."

The trial justice also articulated that physical evidence of abuse is not required by § 23–17.8–1(a)(1)(i), which provides, as summarized by the trial justice, that "it shall not be necessary to prove that the patient or resident was injured by the assault." The trial justice, therefore, was aware that it was not defendant's burden to produce evidence on this issue and he did not require Adewumi to meet such a burden. Furthermore, the trial justice's comment on the lack of expert evidence does not compel the conclusion that defendant was required to produce expert evidence; rather, the comment merely implies that such evidence may have assisted the trial justice, as the trier of fact, to better understand the circumstances of the case. *See LaCroix,* 911 A.2d at 680 (holding similar comment concerning lack of expert testimony did not place burden of persuasion on defendant).

We last consider defendant's complaint with regard to the trial justice's comment about the washcloth. When the trial justice summarized Adewumi's testimony, he

noted that there were gaps in his testimony; more specifically, Adewumi did not mention wetting the washcloth that he used to clean DaRocha. The trial justice considered this finding in evaluating the credibility of Adewumi's testimony along with other facts, such as Adewumi's testimony that he was not able to push the emergency button despite the small size of the bathroom, Adewumi's interest in the outcome of the case, and his evasive demeanor on the witness stand. It is clear to us that the trial justice did not shift the burden of proof to require Adewumi to prove his innocence or disprove any element of the offense. Adewumi was not required to testify or introduce evidence, but once he did, his testimony became subject to the trial justice's independent review because of his role as the finder of fact in a bench trial. We conclude that the trial justice properly considered the factual gaps in Adewumi's testimony as relevant when he assessed credibility. Therefore, the defendant has pointed to no error that would compel this Court to reverse the trial justice's determinations.

### Conclusion

The judgment of the Superior Court is affirmed. The record in this case shall be returned to that tribunal.