STATE

v.

Robert ERMINELLI.

No. 2009–64–C.A.

Supreme Court of Rhode Island.

April 22, 2010.

 

Virginia M. McGinn, Department of Attorney General, for Plaintiff.

Marie T. Roebuck, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

This is an appeal by the defendant, Robert Erminelli, (Erminelli or defendant) from a judgment of conviction by a trial justice, sitting without a jury, for second-degree child molestation, sexual assault. Erminelli was sentenced to twenty-five years, with eight years to serve and seventeen years of probation. He also was ordered to have no contact with the victim, and he was required to register as a sex offender. The defendant filed a timely appeal to this Court.

The parties appeared for oral argument on March 10, 2010, pursuant to an order of this Court that they show cause why the issues raised in this appeal should not summarily be decided without further briefing or argument. After considering the record, the memoranda submitted by the parties, and the oral arguments advanced by each, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons stated below, we affirm the Superior Court's judgment of conviction.

## I

### Facts and Travel

On September 16, 2004, the state filed criminal information number P2/04–2850A alleging two counts against Erminelli. The first count maintained that Erminelli, on May 14, 2004, "did engage in sexual

contact with [Megan], a person fourteen (14) years of age or under, in violation of [G.L. 1956] § 11–37–8.3 and § 11–37–8.4.[1]" In the second count, the state alleged that on that same day Erminelli "did assault [Megan] with intent to commit first degree sexual assault, in violation of [G.L. 1956] § 11–5–1 * * *.[2]"

In November 2006, a Superior Court justice, sitting without a jury, convicted Erminelli of violating G.L. 1956 § 11–37–8.3.[3] The trial justice stated that "[t]here is no question in my mind that the state has proven beyond a reasonable doubt that an assault took place, that there was * * * an inappropriate touching of [Megan] by the defendant." Further, the trial justice was convinced beyond a reasonable doubt that Megan was under fourteen years of age when this assault took place and that Erminelli inappropriately touched the young girl for the purposes of his own sexual gratification.

The trial record reveals the following facts. In the afternoon on May 14, 2004, Jared H., Matthew V., Debbie L., and three other children were playing hide-and-seek in a wooded lot in their Providence neighborhood. Jared and Matthew saw an older man, two girls, and a boy enter the woods through an opening in a fence adjacent to a trash dumpster in a parking lot behind a Family Dollar store.

Jared, who was thirteen years old when he testified at trial in November 2006, said that he saw the older man, who was bearded with white and black hair and who was wearing a blue shirt, and whom Jared identified at trial as Robert Erminelli, bring a brown-haired girl, who was wearing glasses, deeper into the woods. According to Jared, Erminelli told the boy and the other girl to wait by the fence opening. Jared then testified that he heard Erminelli tell the girl with brown hair and glasses to go over by a particular tree. Erminelli then grabbed her hair and pushed her in the direction of the tree. Once they got to the tree, Jared said that Erminelli told the girl to pull her pants down, which she did to her ankles, as Erminelli loosened his own pants and lowered them to his ankles. Jared said that he heard Erminelli order the little girl to get down on all fours, with her hands and feet touching the ground. After she complied, Jared testified that Erminelli got behind the girl and moved his body up and down against the girl's backside for two or three minutes.

---

1. General Laws 1956 § 11–37–8.3 provides: "Second degree child molestation sexual assault.—A person is guilty of a second degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under." Section 11–37–1(7) defines sexual contact as "the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification, or assault."

   Section 11–37–8.4 provides: "Penalty for second degree child molestation sexual assault.—Every person who shall commit second degree child molestation sexual assault shall be imprisoned for not less than six (6) years nor more than thirty (30) years."

2. General Laws 1956 § 11–5–1 provides: "Assault with intent to commit specified felonies.—Every person who shall make an assault with intent to commit murder, robbery, sexual assault, burglary, or the abominable and detestable crime against nature, shall be imprisoned not exceeding twenty (20) years nor less than one year."

3. The trial justice found Erminelli not guilty of violating § 11–5–1. In finding Erminelli not guilty of violating § 11–5–1, the trial justice stated that "I can't say for sure in my mind beyond a reasonable doubt that he actually intended to penetrate her * * * [a]nd, because it is a specific intent crime, I'm not convinced beyond a reasonable doubt that he intended the act of penetration."

Matthew V., who was fifteen at the time of trial, also testified about his observations that day. Matthew said that he was with Jared, playing hide-and-seek, when he saw an older man and a young girl enter the woods. He identified Erminelli as the older man he saw that day, and, like Jared, he described the young girl as having brown hair and wearing glasses. He also testified that a girl and boy were with Erminelli and the brown-haired girl, but those two children stood by the opening in the fence and did not venture farther into the woods. Matthew testified that Erminelli had his pants down, as did the brown-haired girl, and that his "privates" were touching the girl's buttocks; he described Erminelli as "humping" the girl. Matthew also said that Erminelli told the other two children, who were standing near the fence, "not to look."

Matthew and Jared's accounts diverged slightly about what occurred next. Matthew said that after he observed the interaction between Erminelli and the girl, Erminelli noticed him and Jared, and then Erminelli ceased his activity and pulled up his pants. He then dragged the girl over to the fence where the other two children were still standing. At this point, Matthew said that he and Jared went over to the fence, and Erminelli told them that they could take anything they wanted from a neighbor's yard. According to Matthew, it was only after this conversation that he and Jared left the area. Matthew said that he and Jared went to his mother's house and then to Debbie's house to seek assistance from Debbie's father, Daniel Mulcahy. In contrast, Jared said that he never spoke with Erminelli. Jared also testified that when he left the woods to get help, Erminelli remained in the woods with the little girl. Jared also said that he,

Debbie, and Matthew went directly to Daniel's home and that they did not go to Matthew's home first.

Daniel, Debbie's father, lived in the immediate area of the wooded lot. He testified that on May 14, 2004, his daughter Debbie and Jared came to his home. Debbie was nervous; her voice was fast and Daniel could tell by looking at her that something was wrong. As soon as he talked with Debbie, Daniel said he went outside into the woods. Daniel did not see anyone in the woods, but he did see an adult male and three children near the dumpster in the Family Dollar parking lot at the edge of the woods. At trial, Daniel identified that adult male as Erminelli. Daniel said that he called out to Erminelli to "come here[,]" but that Erminelli ran away. Daniel then called the police. Erminelli was arrested shortly thereafter at Lane's, a local drugstore.

Megan,[4] the girl with brown hair and glasses alleged to be the victim, also testified. She said that she was eleven years old in May 2004, when this incident was alleged to have occurred. She testified that Robert Erminelli was her mother's boyfriend and the father of her four siblings, but that he was not her father. Megan testified that on May 14, 2004, she, defendant, her brother William, and her sister Laura[5] went through the wooded area on their way to the home of a friend of defendant, whose name was Eddie.

Megan said that they were only in the woods for a minute, and that they did not stop in the woods for any reason, including to go to the bathroom or to change their clothes. She said that her brother and sister did not stop either. Megan said that Eddie was not home, so the group went to the home of Joe, another friend of defen-

4. We have used a pseudonym to protect the identity of the victim.

5. William and Laura are also pseudonyms.

dant. Joe was at home, and Megan said that she remembered that she and her siblings played with a caterpillar. Then Erminelli, Megan, Laura, and William went to Lane's, where Erminelli purchased candy for the children. Later, all four of them went to the Family Dollar store, and then to defendant's friend Tony's house, and then back to Lane's, where the police met them.

Soon after the police arrested Erminelli, the police interviewed Megan. She denied to the police that anything ever occurred between herself and Erminelli in the woods. Megan said that the police brought her to the hospital for an examination, and during the examination she also denied that anything had happened. The results of the medical examination indicated that Megan had suffered "no outward signs of harm." She was interviewed by a Department of Children, Youth, and Families employee, but again she denied that any sexual assault took place on May 14.

The defense called Laura, Erminelli's daughter, as a witness. Laura was eight years old on May 14, 2004. She testified that on that day she went to Lane's with Megan, William, and Erminelli, then to Family Dollar, and then to Tony's. Laura testified that neither she nor Megan went into the woods with Erminelli between the time they went to the Family Dollar store and the time they arrived at Tony's house.

William, who was only six years old on May 14, 2004, also testified at trial. William said that he, Megan, and Laura attended school on May 14. After school, he, Erminelli, Megan, and Laura left their home and cut through the woods to get to Eddie's house. When Eddie wasn't home they all went to Lane's for chips and soda. William also testified that they took a break while walking through the woods to Eddie's. He said that none of them went

to the bathroom and that William and Megan sat next to each other while Laura and Erminelli rested a few feet away. William testified that they then continued to Lane's. They also went to Joe's, and William also said that the three children played with a caterpillar. William said that they subsequently went to the Family Dollar store, then to Tony's house and then back to Lane's.

The defense also called Anthony Ciaramello as a witness. Ciaramello said he resided in the neighborhood and that his backyard abutted the wooded lot where the incident allegedly took place. He described the area behind his house as more of a field than woods, because there was just "one tree, grass and some brush." Ciaramello said that he could see the wooded area "plain as day" from his backyard, that he was outside in his backyard throughout the day on May 14, 2004, and that he never saw Erminelli and the children in the woods, although he saw some other neighborhood kids playing in the woods. He testified that Erminelli, who performed odd jobs for him and had worked for him that morning, stopped by his house with the children in tow in the afternoon. They talked briefly, and then Erminelli and the children left in the direction of Lane's. Erminelli did not testify.

## II

### Issue on Appeal

The sole issue on appeal is whether the trial justice erred when he denied defendant's motion for a new trial under Rule 33 of the Superior Court Rules of Criminal Procedure.

In his bench decision, the trial justice made a credibility determination that the two boys, Matthew and Jared, and their accounts of the events of May 14, 2004,

were "believable" and that they "were being absolutely truthful with the Court as to what they saw." In making this determination, the trial justice stated that "it's so important to observe and eyeball and examine the demeanor of witnesses" and that he did so throughout the trial testimony. On the other hand, the trial justice characterized the testimony of the alleged victim and her two siblings as "programmed," remarking that "[i]t lacked the credibility or the feeling that one would expect from somebody who was testifying truthfully."

The defendant argues that he is entitled to a new trial because "[t]he trial justice was clearly wrong in finding [defendant] guilty of second degree sexual assault because the evidence was insufficient to prove, beyond a reasonable doubt, that a sexual touching had occurred." The defendant urges to this Court that "the alleged account of events as portrayed by the state's witnesses were neither credible nor reliable, and the trial justice's findings of fact and conclusions of law were flawed." The defendant argues that the state failed to prove two of the three elements of second-degree child molestation sexual assault; namely that there was no "actual physical sexual contact" and that there was no proof that "there was sexual contact for the purpose of gratification or arousal."

### III

### Standard of Review

■ "When this Court reviews the denial of a Rule 33 motion [for a new trial] in the context of a jury-waived trial, we apply the same deferential standard of review as would be applied to the Superior Court justice's factual findings on the merits." *State v. Adewumi,* 966 A.2d 1217, 1222 (R.I.2009) (quoting *State v. DiPetrillo,* 922 A.2d 124, 131 (R.I.2007)). "When reviewing determinations of credibility and

findings of fact by a trial justice sitting without a jury, this Court will not disturb the trial justice's findings unless they are clearly wrong or the trial justice misconceived or overlooked material evidence on a controlling issue." *Id.* (quoting *State v. LaCroix,* 911 A.2d 674, 679 (R.I.2006)). It is well-established that we "accord 'a great deal of respect to the factual determinations and credibility assessments made by the judicial officer who has actually observed the human drama that is part and parcel of every trial and who has had an opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record.'" *State v. Gonzalez,* 986 A.2d 235, 242 (R.I.2010) (quoting *In the Matter of the Dissolution of Anderson, Zangari & Bossian,* 888 A.2d 973, 975 (R.I.2006)).

### IV

### Analysis

■ In affording the trial justice's findings of fact and credibility determinations due deference, as we must, we cannot say that the trial justice's findings were "clearly wrong or the trial justice misconceived or overlooked material evidence on a controlling issue." *Adewumi,* 966 A.2d at 1222 (quoting *LaCroix,* 911 A.2d at 679). In this proceeding, the trial justice was faced with the task of reconciling conflicting accounts of what transpired in a wooded area on May 14, 2004. Jared and Matthew both testified that they watched as Erminelli had his pants down and then rubbed his body against Megan. This is diametrically opposed to the testimony of Megan, Laura, and William, all of whom testified that no such thing occurred. The trial justice recognized the discrepancy, and he made a credibility determination that Jared and Matthew's accounts were

truthful and that Megan, Laura, and William were not testifying accurately.

The trial justice explained in detail the necessity for him to determine the witnesses' credibility and the steps he undertook to evaluate it. After summarizing the testimony in the case, the trial justice stated:

"Some thoughts. Number one, the Court had the opportunity to observe the witnesses as they testified. As I always tell the jurors, one of the things that the fact-finder has to do is to watch the witnesses on both direct and cross-examination, to consider their demeanor, to see if there are consistencies or inconsistencies with what they said while they testified and what they may have said at an earlier time, and I had that opportunity."

The trial justice then proceeded to appraise the credibility of Jared and Matthew. He found their testimony to be "accurate" and that with the exception of some minor inconsistencies each boy's testimony corroborated the others. The trial justice then concluded by stating that he considered both boys to be "believable witnesses."

As to Megan, Laura, and William, the trial justice found at least Megan to be "programmed" and that "[h]er responses were just automatic." Further, the trial justice stated with regard to the siblings' testimony "you could almost sense an automatic nature to it. It lacked the credibility or the feeling that one would expect from somebody who was testifying truthfully." Consequently, the trial justice afforded little weight to their testimony.

To the extent that the trial justice considered the siblings' testimony, he noted the discrepancies between their testimony about whether Erminelli and the siblings went into the woods. William and Megan both testified that they went into the woods, but Laura denied ever going into the woods. Finally, the trial justice determined that "as these siblings testified, they were not being candid with the Court. They may well have believed, * * * as to what they were testifying to, but I'm convinced that they have, essentially, convinced themselves that nothing happened that day * * *."

As a result of our review of the record, we hold that the trial justice's findings of fact and credibility determinations will not be disturbed on appeal. We similarly detect no error in the trial justice's finding that Erminelli was guilty beyond a reasonable doubt of second-degree child molestation sexual assault. The crime of second-degree child molestation sexual assault, § 11–37–8.3, requires proof that the defendant engaged in sexual contact, as that term is defined in § 11–37–1(7), with the victim and that the victim was fourteen years of age or younger. Here, Megan was born on December 30, 1992, which clearly made her fourteen years of age or younger on May 14, 2004. Next, based upon the credible testimony of Jared and Matthew, the trial justice found that Erminelli intentionally touched Megan's naked buttocks with his penis. Such contact "can be reasonably construed as intended by [Erminelli] to be for the purpose of sexual arousal, gratification, or assault." Section 11–37–1(7). Finally, there was no newly discovered evidence offered to the trial justice for his consideration in ruling on the defendant's motion for a new trial. We therefore perceive no error in the trial justice's denial of the defendant's motion for a new trial.

## V

### Conclusion

For the reasons discussed in this opinion, we affirm the judgment of the Superi-

or Court. The record in this case may be remanded to that tribunal.