July 1, 2024

**Supreme Court**

No. 2022-136-C.A.
(K2/19-1A)

State                    :

    v.                   :

Nicholas Finnigan.       :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                         :

v.                         :

Nicholas Finnigan.         :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Long, for the Court.** The defendant, Nicholas Finnigan (defendant), appeals from a Superior Court judgment of conviction following a jury-waived trial at which he was found guilty of one count of second-degree child molestation and received a sentence of ten years, with fifty-four months to serve and the remainder suspended, and ten years of probation. On appeal, the defendant argues that the trial justice's finding of guilt overlooked or misconceived material evidence.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that we may decide this case without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Procedural History

On January 3, 2019, the state filed a one-count criminal information in Kent County Superior Court charging defendant with second-degree child molestation in violation of G.L. 1956 § 11-37-8.3. A jury-waived trial on the single charge commenced on November 15, 2021, during which the trial justice heard testimony from the complaining witness, R.B.; Ms. Jennifer Bates; Ms. Michelle Begin; Ms. Angel Lemoi; Mr. Edward Finnigan; Ms. Heather Bates; and defendant.[1] The transcript of the proceedings reveals the following relevant testimony.

On the night in question,[2] in February 2012, Jennifer and her husband, John Bates; her sister Michelle; and defendant all gathered at the Bates's home in Coventry, Rhode Island, as they regularly did every Friday night. While the adults convened in the basement, R.B., Jennifer's minor daughter, slept upstairs in her bedroom.

R.B. recalled at trial that, at some point after falling asleep in her bedroom, she felt a "rush of cold" on her body and woke up immediately. She opened her eyes to see defendant touching her inappropriately in the genital region. The incident

---

[1] Although R.B. was an adult at the time she testified in defendant's criminal trial, we refer to her by her initials because she was a minor at the time the alleged molestation occurred. Additionally, we refer to the witnesses by first name only for sake of clarity. We intend no disrespect.

[2] The record indicates, as will become clear in our factual recitation, that the witnesses dispute the date of the incident.

lasted for approximately four minutes before R.B. heard her aunt Michelle walk up the stairs and ask defendant "[w]hat the * * * are you doing?" The defendant left the bedroom, R.B. pulled up her pants and underwear, and she lay restless in bed for the rest of the night. Despite the fact that defendant abruptly left the room, R.B. identified the outfit she saw in that moment as the same outfit that defendant had been wearing earlier that night. Additionally, she testified to her memory of defendant and her stepfather, John, as being the only two men present in the home that evening and that the silhouette in her room differed from that of her stepfather. R.B. also testified to her age at the time of the incident; she initially had difficulty remembering whether the incident occurred in 2011 or 2012, but ultimately confirmed that it occurred around the time of her infant brother's passing in February 2012. After further discussion regarding the date of the incident on cross-examination, R.B. testified to being positive that the incident occurred in 2012. She believed that, at that time, she was eleven years old, about to turn twelve years old.

The next morning, R.B. attempted to tell her stepfather what had happened with defendant, but he interjected and explained that defendant had already told him that he entered R.B.'s bedroom only to turn off her television. Thereafter, R.B. outwardly expressed hatred toward defendant. For example, when they both attended family gatherings, R.B. often lashed out at defendant, tried to physically hurt him, and told him to harm himself. Years later, in June 2018, R.B. felt

- 3 -

comfortable enough to tell her grandmother, mother, and stepfather about the incident in a letter titled "The Truth" (the letter). On the same evening in June 2018 that R.B. disclosed the incident, Jennifer took her to the police station to file a report against defendant.

On cross-examination, R.B. testified regarding her use of drugs and alcohol before and during the time she drafted the letter, in addition to her family's history with the Department of Children, Youth, and Families (DCYF). Counsel for defendant also inquired about whether R.B. had ever accused her stepfather of sexual assault. R.B. admitted to using marijuana weekly and to having consumed alcohol in the past but denied drinking alcohol while she wrote the letter. She acknowledged her family's involvement with DCYF due to her stepfather's physical abuse but denied ever accusing her stepfather of sexual assault.

Jennifer also testified in the state's case-in-chief and primarily discussed her recollection of the events that occurred on the night in question and her receipt of the letter. Specifically, she testified to her memories of witnessing her sister, Michelle, ask defendant "[w]hat the * * * are you doing?" and seeing him walk out of R.B.'s bedroom. Further, she discussed the date of the incident; she could not remember whether the incident occurred on the Friday night before the pasta dinner fundraiser for her son's funeral expenses. However, she maintained that it must have been around February 19, 2012, the date of her infant son's passing. At the close of

Jennifer's testimony, the state rested. Counsel for defendant declined to move for dismissal pursuant to Rule 29(b) of the Superior Court Rules of Criminal Procedure and reserved his arguments on the merits for closing statements.

The defendant first called Michelle to testify in his case-in-chief. Michelle testified that she and defendant, who were married at the time of the alleged incident, regularly visited the Bates's home on Friday nights to socialize with the family. She testified that she believed that the pasta dinner fundraiser was held on February 24 and that the alleged incident occurred on the Friday night before the pasta dinner fundraiser. Regarding the events of that evening, Michelle recalled that defendant left the basement where the group convened at approximately 9 p.m. and went upstairs to make drinks. After ten minutes passed, she went upstairs to check on defendant. She admitted to yelling, "Nick, what the * * * are you doing[,]" but testified that she intended the statement as a joke. Michelle testified that defendant explained that he entered R.B.'s room only to turn off the television. She added that no other male besides defendant went upstairs that night while the rest of the group gathered in the basement.

On cross-examination, the state asked Michelle about her impressions of the interactions between R.B. and defendant after the night in question. She stated that, after that night, she noticed a change in R.B.'s temperament toward defendant. She added that they had a loving uncle-niece relationship before the incident, but that

afterward, R.B. started questioning defendant's presence at family gatherings and would leave the room if he attended. On cross-examination, Michelle testified regarding the lies and infidelity that led her to seek a divorce from defendant and testified that, based on that experience, she did not believe defendant had a good character for truthfulness.

The defendant next called Angel Lemoi, who testified that she had known defendant for twelve years and that she met R.B. through babysitting for the Bates family. She denied noticing any changes in R.B.'s temperament toward defendant after the night in question and testified positively to his general trustworthiness. Angel stated that, during her time babysitting for R.B.'s family, she noticed that R.B. lied frequently about her interactions with her younger siblings. Angel conceded on cross-examination that her mother and defendant were in a relationship and living together at the time of trial and that she did not want to see anything bad happen to him.

The defendant also called his grandfather, Edward Finnigan, to testify on his behalf as a character witness. Edward agreed that he worked closely with defendant for eight years and stated that, in his opinion, defendant proved trustworthy. Edward admitted that he did not want to see his grandson get into any trouble.

The defendant's next witness was his girlfriend's sister-in-law, Heather, who testified that she allowed defendant to babysit her teenage daughter on several

occasions and continued to do so even after she learned of R.B.'s allegations. She further testified to defendant's good character and truthfulness.

Finally, defendant testified regarding the night of the alleged assault; he denied the allegations and claimed not to know whether R.B. stayed at the Bates's home on the evening in question. The defendant testified that he and the other adults gathered in the kitchen for the entire evening in question as opposed to the basement, and that he never entered R.B.'s bedroom. He acknowledged having entered R.B.'s bedroom on several prior occasions to turn off the television after she fell asleep.

During closing arguments, counsel for defendant focused primarily on the "critically inconsistent" testimonies elicited at trial. He argued that the testimonies of Michelle and Jennifer contradicted R.B.'s memory regarding the timing of, and the events surrounding, the alleged offense. Conversely, the state emphasized R.B.'s credibility and argued that the inconsistencies referenced by defendant's counsel reflected only minor, inconsequential discrepancies. The state added that it is not unreasonable for a twenty-year-old testifying to an event that happened at the age of ten to mistake minor details.

On November 17, 2021, the trial justice issued a bench decision recounting the significant testimony of all witnesses. The trial justice stated that it was undisputed that R.B. was under fourteen years of age at the time of the assault or that the event, if it occurred, was for the purpose of gratification. The trial justice

identified the issue in dispute as being whether defendant was the perpetrator. In evaluating the testimony of the witnesses on that question, the trial justice found R.B. to be a composed and credible witness who spoke consistently and without hesitation, even when faced with intrusive questions during cross-examination about her marijuana usage. He viewed as compelling the fact that R.B., Michelle, and Jennifer all testified that they observed defendant walk out of R.B.'s bedroom on the evening of the incident. The trial justice acknowledged the mixed testimony regarding whether the incident occurred before or after the pasta dinner fundraiser, but ultimately deemed that point insignificant because defendant's overall testimony lacked credibility. The trial justice found that defendant was in R.B.'s bedroom fondling her on the night of the incident. Accordingly, the trial justice rendered a verdict finding defendant guilty on the single count of second-degree child molestation. The defendant filed a premature, but valid, notice of appeal before the Superior Court entered the judgment of conviction on May 13, 2022. *See* Article I, Rule 4(b) of the Supreme Court Rules of Appellate Procedure.

Before this Court, defendant contends that the trial justice overlooked or misconceived material testimony about the night of the alleged incident and specifically argues that the trial justice failed to properly weigh the conflicting testimony regarding the actual date of the alleged incident.

**Discussion**

Rule 23(c) of the Superior Court Rules of Criminal Procedure provides that, "[i]n a case tried without a jury the court shall make a general finding and shall in addition on request find the facts specially and state separately the court's conclusions of law thereon." Super. R. Crim. P. 23(c). We apply a deferential standard of review to the factual findings made by a trial justice sitting without a jury. *State v. Adewumi*, 966 A.2d 1217, 1221-22 (R.I. 2009). In reviewing those findings, this Court will not disturb a verdict unless the trial justice was clearly wrong, or misconceived or overlooked material evidence. *Id.* However, our task is not simply to rubber-stamp the findings of the trial justice, but instead to review the record carefully to determine whether competent evidence exists to support the conclusion. *State v. Forand*, 958 A.2d 134, 138 (R.I. 2008).

The state charged defendant with second-degree child molestation sexual assault pursuant to § 11-37-8.3, which requires that the state prove the following beyond a reasonable doubt: (1) that the victim was under fourteen years of age at the time of the assault; (2) that defendant intentionally made sexual contact with the victim's intimate parts, regardless of whether she was clothed or unclothed; and (3) that the intentional touching was for the purpose of sexual arousal, gratification, or assault. Section 11-37-8.3; *see also* § 11-37-1(7). We have conducted a careful review of the record and conclude that sufficient competent evidence exists to

support the trial justice's general finding of guilt beyond a reasonable doubt on the charge of second-degree child molestation.

There is no dispute that R.B. had not yet turned fourteen years of age at the time of the incident. In the letter, R.B. wrote that she remembered being eleven years old when the incident occurred. At trial, she testified, consistent with the letter, that the incident occurred around the time of her infant brother's passing in February 2012.[3]

We, like the trial justice, agree that R.B.'s testimony sufficiently supported a finding identifying defendant as the individual who made sexual contact with R.B. First, the transcript indicates that R.B. testified consistently and the trial justice, whose credibility assessments are entitled to great deference, found that she testified without hesitation even when the questions on cross-examination became more intrusive. *State v. Erminelli*, 991 A.2d 1064, 1069 (R.I. 2010) (acknowledging that great deference is afforded to factual and credibility determinations of a trial justice sitting without a jury because she or he has actually observed the "human drama that

_____

[3] We note that R.B. was born on February 27, 2001. Her testimony that the incident occurred around the time of her infant brother's passing in February 2012 places her age at the time of the incident at ten years old, soon to turn eleven years old. While we recognize that the foregoing contradicts R.B.'s testimony that she believed she was eleven, about to turn twelve years old, at the time of the incident, sufficient competent evidence nonetheless exists to support the trial justice's determination that the event, regardless of whether R.B. was ten or eleven years old at the time, occurred in February 2012 around the date of her infant brother's passing.

is part and parcel of every trial and has had an opportunity to appraise witness demeanor") (quoting *State v. Gonzalez*, 986 A.2d 235, 242 (R.I. 2010)).  R.B. provided a detailed and specific description of the incident, and both Michelle and Jennifer verified a notable aspect of her recollection—that Michelle observed defendant in R.B.'s room and exclaimed "[w]hat the * * * are you doing?" Furthermore, we agree with the trial justice that R.B.'s testimony—that she attempted to disclose the incident to her stepfather but that he interrupted her and stated that defendant had admitted to going into R.B.'s room, but only to turn off the television[4]—served as indirect evidence of defendant's physical presence in R.B.'s room on the night in question.

Based on our review of the record, we are also satisfied that the state met its burden of proving intentional touching for the purpose of sexual arousal, gratification, or assault.  In *Erminelli*, this Court held that evidence that the defendant intentionally touched the complaining witness's intimate parts sufficiently sustained a conviction for second-degree child molestation because such contact reasonably indicated the defendant's objective of sexual arousal, gratification, or assault. *Erminelli*, 991 A.2d at 1070.  Here, the record supports a finding that defendant

---

[4] The defendant suggests in his Rule 12A statement to this Court, without meaningful discussion, that this is hearsay evidence.  We note that there was no contemporaneous objection to that testimony at trial; consequently, any objection is waived. *State v. Leonard*, 296 A.3d 111, 121 (R.I. 2023).

intended to assault R.B. on the night in question. The testimony indicates that defendant deceived the adults at the Bates's home that evening by disguising his trip upstairs from the basement as an effort to "make drinks" or use the bathroom, when he instead proceeded to R.B.'s bedroom where she slept and made deliberate sexual contact with her. Moreover, R.B. testified that defendant touched her inappropriately for approximately four minutes. Viewing these facts as a whole, we discern no error in the trial justice's decision finding defendant guilty beyond a reasonable doubt of second-degree child molestation.

The defendant nevertheless contends that the trial justice misconceived or overlooked notable inconsistencies in the trial testimony regarding the actual date of the sexual assault. However, it is clear from the transcript of the decision that the trial justice did not misconceive or overlook the inconsistent testimony about whether the incident occurred before or after the pasta dinner fundraiser; rather, he recognized it forthrightly and explained that he viewed it as inconsequential, particularly in light of defendant's testimony about the night in question, which he deemed to be not credible. What was significant for the trial justice, however, was that, even though all recollections did not match exactly so many years after the event in question, R.B. testified credibly about the molestation, and Jennifer and Michelle corroborated her testimony that she heard Michelle ask defendant, "[w]hat the * * * are you doing?" as he left her bedroom immediately after he assaulted her.

Like the trial justice, we acknowledge the differing testimony regarding the actual date of the incident in relation to the pasta dinner fundraiser, and we accept the trial justice's rationale and defer to his credibility determinations. *Adewumi*, 966 A.2d at 1222.

The defendant also contends that the trial justice erred by failing to find any corroboration of R.B.'s testimony about the sexual assault. We have previously declined to recognize any requirement of independent corroboration for sex-offense cases because the corroboration requirement "arbitrarily singles out victims of sex offenses as a class whose credibility is immediately suspect." *State v. Rathbun*, 184 A.3d 211, 218 (R.I. 2018) (quoting *State v. Cabral*, 122 R.I. 623, 628, 410 A.2d 438, 441 (1980)); see also § 11-37-11. Moreover, despite the lack of a corroboration requirement, we emphasize again that the trial justice found that the testimonies of Michelle and Jennifer corroborated aspects of R.B.'s memory of that night.

Based on the foregoing, we conclude that the trial justice did not clearly err in finding that the state proved the defendant's guilt of second-degree child molestation beyond a reasonable doubt, and we therefore affirm the conviction.

## Conclusion

For the reasons stated herein, we affirm the Superior Court's judgment of conviction and remand the papers to the Superior Court.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Nicholas Finnigan. |
| **Case Number** | No. 2022-136-C.A. (K2/19-1A) |
| **Date Opinion Filed** | July 1, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Luis M. Matos |
| **Attorney(s) on Appeal** | For State:<br><br>Sean Paul Malloy<br>Department of Attorney General<br><br>For Defendant:<br><br>John L. Calcagni, III, Esq. |